**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kathi Ann Sharpe,<br><br>Plaintiff,<br><br>v.<br><br>Select Portfolio Services, Inc.,<br><br>Defendant. | No. CV-2011-01436-PHX-GMS<br><br>**ORDER** |

Pending before the Court is the Motion for Summary Judgment (Doc. 21) of Defendant Select Portfolio Servicing Incorporated ("Select").[1]  The Motion is fully briefed, and no party has requested oral argument.  As it appears to the Court that transfer may be required, Select's motion for summary judgment will not be addressed herein.

**I.    Background**

On March 25, 2002, Plaintiff Kathi Sharpe ("Plaintiff") refinanced her home mortgage with Fremont Investment & Loan. (Doc. 22 ¶ 1; Doc. 25 ¶ 1).  Plaintiff was informed by letter that effective October 1, 2002, servicing of the loan was transferred to Select. (Doc. 22 ¶ 2).  Plaintiff went into default on the loan, and on May 23, 2002, Select noticed a trustee's sale for August 28, 2003.  (*Id.* at ¶ 15).  On July 24, 2003,

---

[1] At the time of the incidents giving rise to this litigation, Select Portfolio Services, Inc. went by the name of Fairbanks Capital Corporation.  After settling two lawsuits, one a class action and one brought by the Federal Trade Commission ("FTC") alleging various unfair business practices, it changed its name to Select Portfolio Services, Inc. For clarity, Defendant will be referred to as Select throughout this Order.

Plaintiff notified Select that she intended to rescind the loan because she was not provided with a signed and dated notice of her right to rescind pursuant to the Truth in Lending Act ("TILA").  15 U.S.C. § 1635(f) (2006).  (Doc. 22 ¶ 17; Doc. 25 ¶ 10).  On September 4, 2003, Select cancelled the trustee's sale to allow time to investigate Plaintiff's rescission demand.  (Doc. 22 ¶ 19).

In 2003 Select had been the defendant in a class action in the District Court of Massachusetts and a related enforcement action brought by the Federal Trade Commission ("FTC") and the Department of Housing and Urban Development ("HUD").  (Doc. 1, Ex. 1 ¶ 14).  The suits alleged that "[Select] has engaged in a pattern and practice of uniform nationwide unfair, unlawful and deceptive business practices in its Servicing of residential mortgage loans, and that [Select] has engaged in other conduct that breaches statutes, contracts, and common law."  (Doc. 6, Ex. 10 at 1).  The alleged misconduct "resulted in substantial overpayment of fees and charges in connection with their mortgage loans, and has exacerbated delinquencies and caused unnecessary or illegal foreclosures."  (*Id.* at 2).  Both suits were settled together by an agreement approved by the Massachusetts District Court.  *United States v. Fairbanks Capital Corp.*, No. 03-12219-DPW, 2004 WL 3322609 (D. Mass. May 12, 2004); *Curry v. Fairbanks Capital Corp.*, No. 03-10895-DPW, 2004 WL 3322609 (D. Mass. May 12, 2004).  The Settlement Agreement certified a class consisting of, among others, all persons whose loans were serviced by Select between January 1, 1999, and November 14, 2003, and whose loans were "in Default or treated as being in Default by [Select]" during that period.  (Doc. 23-2. Ex. A at 62 § I(3)(a)(i)).  The Settlement Agreement established a $40 million redress fund and substantial injunctive relief, including creating a "Default Resolution Program" and implementing specified "Operational Practices" designed to assist borrowers.  (*Id.* at 60 ¶ L).  The Default Resolution Program became effective June 13, 2004, and the Operational Practices became effective July 1, 2004.  (Doc. 22 ¶ 38).  In its order approving the settlement, the court wrote, "the Court hereby retains exclusive jurisdiction of all matters relating to the interpretation, administration, implementation,

effectuation, termination (under the Settlement Agreement or otherwise) and enforcement of the Agreement and any orders entered in these cases." *Fairbanks*, 2004 WL 3322609, at *5. The Settlement Agreement contains a section entitled "Reserved Claims and Defenses," which excepts from release, "any claims or defenses that a Settlement Class Member asserts, affirmatively or defensively, with respect to [Select]'s Servicing in an effort to defeat any pending or future real estate foreclosure action (whether judicial or nonjudicial), including those related to the Servicing practices covered by this agreement." (Doc. 23-2, Ex. A at 69-70 § I(31)(a)).

Plaintiff's home was sold at a trustee's sale on September 21, 2004. (Doc. 22 ¶ 45; Doc. 25 ¶ 29).

Plaintiff filed this suit in Maricopa County Superior Court. Select removed this matter to federal court based upon diversity jurisdiction. (Doc. 1). Plaintiff's breach of contract cause of action is her only claim that survived the Court's January 10, 2010, Order (Doc. 10), which dismissed Plaintiff's other claims.

**II.    Discussion**

The Court's prior Order (Doc. 10) found that Plaintiff's breach of contract cause of action was predicated upon Select's failure to notify Plaintiff of her status as a class member, in addition to Select's failure to abide by the terms of the Settlement Agreement. (Doc. 10 at 10-11). The Court noted that Select made "no effort to dispute" the allegation that it failed to provide Plaintiff notice of her class status. (Doc. 10 at 11). Due to the notice issue, the Court determined it was unclear whether the provisions of the Settlement Agreement retaining jurisdiction applied. (Doc. 10 at 10).

In its motion for summary judgment, Select now proffers evidence establishing that Plaintiff was mailed notice of her class status and of the preliminary settlement agreement on February 24, 2004. (Doc. 26 at 4; Doc. 23-2, Ex. C). Whether this notice is sufficient to establish that Select provided best notice practicable under the circumstances, so as to bind Plaintiff, is in fact a question relating to "the interpretation, administration, implementation, effectuation, . . . and enforcement of the Agreement."

1 *Fairbanks*, 2004 WL 3322609. Similarly, whether Plaintiff may assert a claim under the Settlement Agreement is also a question concerning "the interpretation, administration, implementation, effectuation, . . . and enforcement of the Agreement." *Id.*

Given the District of Massachusetts's familiarity with and continuing jurisdiction over the matters that form the basis of Plaintiff's surviving claim, the Court is inclined to find that transfer of the case to the District of Massachusetts is warranted. *See Dowling v. Select Portfolio Servicing, Inc.*, 2007 WL 2815567, at *2, 5 (S.D. Ohio 2007) (granting plaintiff's motion to dismiss in part because plaintiff wanted to challenge Select's compliance with the Settlement Agreement, which "she can only do before the Curry court, given that court's continuing jurisdiction over the *Curry* Settlement."); *see also Koehler v. Green*, 358 F. Supp. 2d 346, 347 (S.D.N.Y. 2005) (transferring case to Eastern District of Missouri where the claim asserted arose out of a previous case that resulted in a settlement agreement, and the court that approved the settlement had retained jurisdiction over the case "for all matters relating thereto."); *Willoughby v. Potomac Elec. Power Co.,* 853 F. Supp. 174, 176 (D.Md. 1994) (transferring case to District of Columbia where the case was "tightly intertwined with the Consent Decree recently issued by the District of Columbia Court" and noting that "a district court that enters a consent decree and retains enforcement jurisdiction in all probability has exclusive jurisdiction over claims relating to it."). *See also Minn. Mining & Mfg. Co. v. Technical Tape Corp.,* 123 F. Supp. 497 (N.D. Ill. 1954) ("Section 1404(a) of Title 28 was designed to prevent duplicate trials of the same subject matter."). Accordingly,

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

**IT IS HEREBY ORDERED** that within **30 days** of the filing date of this Order, the Parties must **show cause** why this action should not be transferred to the District of Massachusetts.

Dated this 17th day of December, 2012.

*A. Murray Snow*
G. Murray Snow
United States District Judge